IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

TIMOTHY W. JORDAN,                                                    PETITIONER

v.                                          CIVIL ACTION NO.: 3:12cv105-GHD-JMV

STATE OF MISSISSIPPI, et al.,                                        RESPONDENTS

## MEMORANDUM OPINION AND ORDER

Petitioner, Timothy Jordan, Mississippi prisoner # 143269, has filed a *pro se* federal

habeas petition pursuant to 28 U.S.C. § 2254 challenging his state court convictions for sexual

battery, touching a child for lustful purposes, and child neglect. Having considered the

submission of the parties, the State court record, and the law applicable to Petitioner's claims, the

Court finds that the petition should be denied, for the reasons that follow.

### Background Facts and Procedural History

In 2006, Krystal Jordan, Timothy ("Tim") Jordan, Glenn Grose, and Johnny Grose were

indicted for the sexual battery, gratification of lust, and child neglect of Krystal and Tim's three

year-old daughter, B.J. Krystal[1] pled guilty to three counts of sexual battery and felony child

abuse and testified against the remaining defendants at their joint trial.[2] The men were convicted

---

[1] Because several individuals involved in this case share the same surname, the Court
refers to each member of the Jordan and Grose families by their first names. The Court also
notes that Krystal's mother, identified only as "Gloria" herein, is named in the record as both
"Gloria Hollis" and "Gloria Becerril," due to a change in marital status. Additionally, the Court
notes that Mrs. Jordan is identified in the transcript as "Cristal," "Kristi," and "Christy", but she
will be designated throughout this Opinion and Order as "Krystal" unless the Court is quoting
from the record.

[2] Tim filed a motion for severance but was denied.

of the charges. A brief recitation of the events leading up to their conviction is as follows:

In October 2005, Krystal and Tim Jordan were living in the home of Johnny Grose and Glenn Grose. The Jordan's children, B.J., the victim in this case, and S.J., her infant sister, lived there as well. On October 20, 2005, Rhiannon Shaw, employed as a family protection specialist by the Lafayette County Department of Human Services, received an anonymous telephone call reporting the possibility that drug use, prostitution, and child neglect might be occurring in the home. A few days later, Krystal was arrested on a domestic violence charge involving Tim. Krystal's mother, Gloria, subsequently picked up both B.J. and S.J. On October 31, 2005, Gloria reported to Shaw that B.J. "was having problems with potty training; that her bottom was very raw; and she was [making] specific comments about people touching her and had named specific names such a[s] her father, Glenn and Johnny Grose." Shaw told Gloria not to question B.J. and informed Gloria that she would set up a forensic interview with B.J.[3]

The forensic interview was conducted on November 3, 2005, by Ejeera Joiner of Family Crisis Services. Shaw sat concealed from B.J.'s view behind a one-way mirror. During the interview, B.J. reported that Tim, Glenn, and Johnny had touched her vagina with their penises, and she demonstrated the acts using anatomically correct dolls. Tomiko Mackey, a clinical social worker accepted by the court as an expert in forensic examination, testified that she had observed a DVD of the forensic interview and had some concerns with Joiner's questioning technique, although she agreed that Joiner followed the appropriate protocol. She observed that B.J. was

---

[3] A DVD of the interview was introduced into evidence and played for the jury at trial. (SCR vol. 5, 406).

2

fairly consistent in her disclosure of the abuse and the persons responsible for it.[4]

Martha Hester Grose, Krystal's maternal grandmother, testified that, following Krystal's October arrest, she and her husband, Larry Grose, went to the Grose home. While there, she reported, B.J. asked to go home with Martha and Larry, and Tim agreed to let her go. Martha reported that she and Larry took B.J. to a motel room in Bruce, and that B.J. cried after using the bathroom and after sitting down in a bathtub to bathe. Martha recounted that when she asked B.J. if someone had hurt her "down there," B.J. answered, "Yes, Mammaw, Tim and Christy and Johnny and Glen." The next morning, Martha and Larry drove B.J. to Gloria's home and told Gloria what B.J. had said. She reported that Gloria called the Department of Human Services.

Dr. Thomas Fowlkes, a physician specializing in emergency and correctional medicine, treated Krystal while she was incarcerated at the Lafayette County Detention Center. Dr. Fowlkes testified that information obtained from Krystal indicated that she was abusing cocaine, marijuana, and prescription painkillers at the time of her arrest. He reported that he placed Krystal on an antidepressant and an antipsychotic medication. He concluded that Krystal was mildly mentally retarded when he began treating her, and that she had "some organic brain syndrome" or sustained some additional brain damage that rendered her less functional than she was when he began treating her. Dr. Fowlkes stated that Krystal had abused inhalants since her incarceration, which he opined were responsible for her mental deterioration.

Krystal testified that she routinely drank alcohol and abused drugs while married to Tim, and she also admitted that she had a sexual relationship with both Glenn and Johnny. Krystal

---

[4] During the interview, Joiner asked about B.J.'s grandmother, and B.J. stated that her grandmother had touched her, as well. There was testimony at trial to indicate that B.J. did not refer to either Martha or Gloria as "Grandmother."

reported that when she was "big" and pregnant with S.J., Tim suggested that he have sex with three year-old B.J. Krystal testified that she, Tim, and B.J. all got into the shower together at their home, and that she held B.J. up while Tim had sexual intercourse with B.J., who screamed and cried for help during the assault. She reported that in later sexual assaults, she and Tim gave B.J. a Lortab, a prescription painkiller, to help keep her calm. After S.J. was born, the family moved to the Grose trailer. There, Krystal maintained, Tim continued to abuse B.J. She testified that Glenn learned of the abuse and asked to have sex with B.J., to which she consented.

Krystal testified that Johnny learned that the other two men were having sex with B.J. and asked to have sex with her, as well. Krystal reported that she consented and gave B.J. a Lortab. She also stated that she performed fellatio on Johnny to show B.J. how to do it, and that afterwards, B.J. performed the act on Johnny.

On cross-examination, the defense presented letters Krystal wrote to the defendants while they were incarcerated. In these letters, some of which she denied writing, Krystal maintained the innocence of the defendants and herself. She was also questioned about her plea agreement, and, as the State court noted, she "had difficulty answering the questions." She acknowledged, however, that she received a plea deal. She also stated that she did not think the deal would be revoked if she refused to testify against the defendants.

Pammie Davidson, a licensed social worker employed as the victim's assistance coordinator for the district attorney's office, testified that she met with Krystal between ten and fifteen times between October 2007 and September 2008 and helped prepare her for trial. Over the objection of defense counsel, she testified about the prior statements Krystal made to her regarding the defendants' abuse of B.J.

4

Pediatric medicine expert, Dr. Tanya King, testified that she first examined B.J. on November 3, 2005. She found inflammation in B.J.'s genital area, as well as bruising on both sides of her vagina. While B.J.'s hymen was not torn, Dr. King noted that a child's vagina is small and the hymen recessed, making total penetration difficult for the perpetrator. She also testified that B.J.'s anus was abnormally dilated, and that the injury was caused by the repeated penetration of an object, which had occurred over a period of months. Despite having performed between 200 and 300 examinations on victims of child sexual abuse, Dr. King stated she had never seen another child with an anus so damaged.

Krystal's mother, Gloria, testified that when Martha brought B.J. to Gloria's home and told her that B.J. had complained of pain during urination, Gloria examined B.J.'s vaginal area and found it "red and raw." She reported that B.J. told her on several occasions that "Kristi and Tim and Glen and Johnny had hurt her."[5] Gloria reported the abuse to the Department of Human Services. Gloria testified that after the allegations of sexual abuse were made, B.J. began to masturbate in public, attempt to grab peoples' private areas, request that someone touch her or request to touch someone, abuse the family dog, physically assault S.J. and attempt to fondle her, simulate oral sex with food, and eat and smear her own feces.

Clinical social worker, Robin Smith, testified as B.J.'s treating therapist. She began treating B.J. shortly after the child turned four years old, while she was still in Gloria's custody. She testified that B.J.'s behavior, as reported by Gloria, showed a desperate attempt for attention. She reported that B.J. indicated that the defendants touched her in her vaginal and anal areas. Smith also testified that B.J. was very provocative in her behavior, even with Smith. She

---

[5] B.J. also named Larry Grose as a perpetrator sometime later.

reported that B.J. would stare at people inappropriately and attempt to touch other children inappropriately, and that she would eat and/or smear her feces. Smith testified that she had never seen a child eat and/or smear her feces that was not sexually abused. She maintained that B.J. would revert to these behaviors when questioned about the abuse. Smith diagnosed B.J. with post-traumatic stress syndrome, both the inattentive and hyperactive types of Attention Deficit Hyperactive Disorder, and reactive attachment disorder. She also determined that B.J. suffered trichotillomania, a disorder manifested by the obsessive pulling out of her own hair. Smith testified that B.J. consistently testified that her parents, Glenn, Johnny, and Larry touched her vagina.

During his case-in-chief, Tim presented several witnesses who testified that he was a good father, and he presented several witnesses who testified that they babysat B.J., and that she never complained to them about vaginal pain. He also presented the testimony of a nurse practitioner who treated B.J., and who testified that she never suspected that B.J. was sexually abused. Two of Tim's siblings also testified that they had never heard B.J. complain of vaginal pain. Tim denied having any sort of sexual contact with B.J., testifying that he only touched her "down there" when he was giving her a bath or helping her clean herself after she used the bathroom. He admitted to using drugs and drinking alcohol, and he admitted knowledge of Krystal's extramarital affairs. Tim testified that he did not think that Glenn or Johnny, both of whom denied sexual contact with B.J., would sexually abuse her.

Petitioner was convicted by a jury in the Circuit Court of Lafayette County, Mississippi, of four counts of sexual battery, one count of touching a child for lustful purposes, and one count of felony child neglect. On October 14, 2008, he was sentenced to serve life imprisonment for

6

each of the sexual battery convictions, ten years for touching a child for lustful purposes, and ten years for felony child neglect, all in the custody of the Mississippi Department of Corrections.[6]

With the assistance of new counsel, Petitioner appealed his convictions and sentences, raising the following issues:

Issue 1:     Whether the trial court allowed improper legal opinions which were comments on the evidence and witness veracity?

Issue 2:     Whether Jordan was prejudiced by amendments to the second superceding indictment?

Issue 3:     Did the trial court err in denying Jordan a separate trial?

Issue 4:     Was the tender years exception properly applied?

Issue 5:     Whether the verdict is contrary to the weight of the evidence?

On September 14, 2010, the Mississippi Court of Appeals affirmed the judgment of the trial court. *See Jordan, Grose, and Grose v. Sate*, 80 So. 3d 817 (Miss.Ct.App. 2010), *reh'g denied*, June 7, 2011, *cert. granted*, Sept. 8, 2011, *cert. dismissed*, Feb. 16, 2012 (Cause No. 2008-KA-01761-COA). On August 6, 2012, in the Mississippi Supreme Court, Petitioner, proceeding *pro se*, filed application for leave to proceed in the trial court with a motion for post-conviction relief raising the following issues[7]:

Issue One:     Whether petitioner was denied due process of law where the state accepted Robin Smith as an expert witness and allowed her opinionated testimony.

---

[6] At trial and on direct appeal, Petitioner had two co-defendants: Glenn Grose and Johnny Grose. The Court notes that both co-defendants filed federal habeas petitions. *See, e.g., Glenn Grose v, Streeter, et al.*, Cause No. 3:12cv46-MPM-DAS; *Johnny Grose v. Epps, et al.*, Cause No. 3:13cv47-MPM-SAA.

[7] The Court has slightly modified the wording of Petitioner's claims but has not altered the substance of said claims.

Issue Two: Whether the court erred where it admitted alleged hearsay testimony or statement of minor pursuant to Miss. R. Evid. 803(25) where such testimony violated Petitioner's Sixth Amendment Confrontation Clause right.

Issue Three: Whether the court erred in not giving an alibi instruction to the jury where Petitioner had a right to defend himself concerning the alleged dates the offenses were supposed to have taken place.

Issue Four: The court erred by allowing the state to repeatedly rehabilitate and alter testimony of state witness Krystal Jordan by improper leading by her former counsel Cornelia Pettis Fondren.

Issue Five: Whether the court erred by allowing the prosecution to amend the indictment in substance not mere form.

Issue Six: The verdict is against the overwhelming weight of the evidence.

Issue Seven: The cumulative effects of the errors warrant reversal of sentence and convictions.

On September 19, 2012, the Mississippi Supreme Court filed an order dismissing the motion, holding as follows:

> In this petition, Jordan raises a number of issues that were raised on direct appeal. Those issues are procedurally barred by the doctrine of res judicata pursuant to Miss. Code Ann. § 99-39-21(3). Furthermore, failure to raise issues capable of determination at trial or on direct appeal constitutes a waiver of those issues. Miss. Code Ann. § 99-39-21(1). Therefore, the motion for post-conviction relief is procedurally barred. The panel finds that the application meets no exceptions to the procedural bar and should be dismissed.

(Answer, Ex. B) (Case No. 2012-M-01259).

Petitioner filed the instant petition on or about November 14, 2012, raising the following issues, *pro se*:

Ground One. Petitioner Jordan claims are not procedurally barred by limitation bars or successive writ bar, nor res judicata.

8

| Ground Two. | Whether Petitioner Jordan was denied due-process of law where state accepted Robin Smith as expert witness, allowing opinionated testimony. |
| Ground Three. | Whether court erred where it admitted hearsay testimony or statement of a minor pursuant to M.R.E. 803(25) violating Jordan right to confront state witness. |
| Ground Four. | Whether the court erred in not giving alibi instruction where petitioner had the right to defend himself concerning the alleged dates of crime commission. |
| Ground Five. | Whether the court erred by the state repeatedly rehabilitate and alter the testimony of the state witness Krystal Jordan by improper leading, when Krystal's lawyer called to testify. |
| Ground Six. | Whether the court erred by allowing the prosecution to repeatedly amend the indictment in substance and not mere form. |
| Ground Seven. | Whether the verdict is against the overwhelming weight of the evidence. |
| Ground Eight. | Cumulative errors. |

## Legal Standard

The Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## I. Procedurally barred claims

### A. Mississippi Code Section 99-39-21(1)

The Mississippi Supreme Court held the claims raised in Grounds Four, Five, and Eight procedurally barred on post-conviction review pursuant to Mississippi Code Annotated § 99-39-21(1), on the basis that these claims could have been raised on direct appeal. That section provides:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss. Code Ann. § 99-39-21(1).

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citation omitted). Petitioner argues that the Mississippi Supreme Court does not apply procedural bars to "errors affecting fundamental constitutional rights." *Rowland v. State*, 42 So. 3d 503 (Miss. 2010). He has not, however, identified any cases where the Mississippi Supreme Court has failed to apply procedural bars to post-conviction claims which are similar or identical to the claims presented here.

Moreover, the Fifth Circuit has held that § 99-39-21(1) is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The adequacy of the bar applied to Petitioner's claims depends on "whether Mississippi has strictly or regularly applied it." *Id.*

10

(citation omitted). Petitioner bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Id.* Petitioner has not carried this burden of proof and shown an "inconsistent and irregular" application of the bar. *Id.* at 861. He has, therefore, defaulted these federal claims pursuant to an independent and adequate state procedural rule.

In order to obtain habeas review of his barred claims, Petitioner must demonstrate cause for the default and actual prejudice as a result, or that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" in this context is something external to the petitioner that cannot be fairly attributed to him. *Id.* at 753. Attorney error can, in some circumstances, constitute "cause" for a procedural default, but a defendant who is not represented by constitutionally ineffective counsel cannot assign attorney error as the cause of his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner has identified no external impediment that prevented him from raising the claims in State court, and he has not demonstrated that his trial or appellate counsel rendered ineffective assistance.[8] Therefore, because Petitioner fails to demonstrate cause, the Court need not question whether there is prejudice. *See Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither does Petitioner establish that failure to consider his claims would result in a fundamental miscarriage of justice. The "fundamental miscarriage of justice" exception is

---

[8] The Court otherwise notes that, in order to argue the ineffective assistance of counsel as cause to overstep the procedural bar, Petitioner would have had to raise and exhaust an independent claim of ineffective assistance of counsel for failure to raise the claims in Grounds Four, Five, and Eight. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).

11

confined to cases of actual innocence where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation and internal quotation marks omitted). A petitioner claiming this exception must present new, reliable evidence and show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (citation omitted). Petitioner cannot satisfy this burden, and federal habeas relief cannot be granted with respect to the allegations in Grounds Four, Five, and Eight.

**B.    New Claim**

In Ground One, Petitioner asserts that the claims raised in his petition are not procedurally barred. The Court finds that, to the extent that Petitioner asserts Ground One as an independent basis for federal habeas relief, he has never presented this claim to the Mississippi Supreme Court in a procedurally proper manner and has, therefore, failed to exhaust his State remedies as to this claim.

"Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief." *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). To satisfy this requirement, a federal habeas petitioner must generally present his claims to the state's highest court in a  procedurally proper manner and provide that court with a fair opportunity to pass upon the claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Petitioner did not raise this claim on direct appeal or in his motion for post-conviction relief, thereby forfeiting his opportunity to have the Mississippi Supreme Court consider it. There is no avenue available for Petitioner to present his claims to the court now in a procedurally proper manner. Accordingly, he has "technically exhausted" his claim in Ground One, and it is

considered procedurally defaulted. *See Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998) ("[W]hen federal habeas claims are technically exhausted because, and only because, [petitioner] allowed his state law remedies to lapse without presenting his claims to the state courts. . . [,] there is no substantial difference between nonexhaustion and procedural default."); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

Therefore, in order to obtain habeas review of his defaulted claim, Petitioner must demonstrate cause for the default and actual prejudice as a result, or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. As previously noted, "cause" in this context is something external to the petitioner that cannot be fairly attributed to him. *Id*. at 753. Petitioner has not demonstrated that any external impediment prevented him from raising these claims to the Mississippi Supreme Court, and he fails to demonstrate cause for the default. Because he fails to demonstrate cause, it is unnecessary for the Court to consider the issue of prejudice. *See Martin*, 98 F.3d at 849. Furthermore, there will be no fundamental miscarriage of justice for failing to consider these claims on their merits, because Petitioner cannot demonstrate that he is actually innocent of the crimes for which he was convicted and sentenced. *See Fairman*, 188 F.3d at 644. Accordingly, habeas relief cannot be

13

granted with respect to the allegations in Ground One of the petition.[9]

## II. Robin Smith

Petitioner claims that the trial court should not have accepted Robin Smith as an expert

witness, and thus, allowed her testimony. Smith was B.J.'s therapist and a licensed social

worker, and the trial court accepted her as an expert as a licensed clinical social worker. (SCR

vol. 3, 35). She testified that further questioning about the events would negatively affect B.J.'s

mental health. The trial court held that B.J. was unable to testify and that the tender years

exception should apply in this case. B.J.'s hearsay statements were admitted into evidence. On

direct appeal, the Mississippi Court of Appeals found that the trial court did not abuse its

discretion by determining that B.J. was unavailable as a witness because of the impact testifying

would have had on her health. *Jordan*, 80 So. 3d at 827-28.

A state court's evidentiary rulings are issues of state law and are cognizable on federal

habeas review "only if they run afoul of a specific constitutional right or render the petitioner's

trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit

v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). In reviewing a state court's evidentiary rulings, a

federal habeas court "'is limited to determining whether a trial judge's error is so extreme that it

constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v.

Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (citation omitted). The "erroneous admission of

---

[9] Respondents argue that Ground Eight is procedurally barred as "technically exhausted," rather than as defaulted pursuant to an independent and adequate State rule of procedure. The Court notes that under either doctrine, Petitioner has not demonstrated the requisite cause and prejudice or "fundamental miscarriage of justice" to receive a merits review of claim.

prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999) (citation omitted).

Robin Smith was qualified as an expert witness after voir dire by the State and by the defense. (SCR vol. 3, 35). Her opinion on the victim's health was properly presented to the court. Petitioner has failed to demonstrate any error by the trial court or present a claim upon which habeas relief may be granted. Accordingly, habeas relief as to this claim is denied.

### III.    B.J.'s statements

Petitioner alleges that his right to confront a witness was violated when the trial court admitted B.J.'s statements pursuant to Mississippi Rule of Evidence 803(25), commonly known as the "tender years exception." He claims that the exception was not properly applied in this case, because B.J. was not unavailable to testify, her statements were not reliable, and the statements were testimonial in nature, violating his right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004).

On direct appeal, the Mississippi Court of Appeals found that the trial court did not abuse its discretion in determining that B.J. was unavailable as a witness, as the victim's therapist opined that "further questioning about the events would negatively affect [B.J.]'s mental health." *Jordan*, 80 So. 3d. at 827-28. It also noted that the trial court conducted an examination to determine whether B.J.'s "statements possessed substantial indicia of reliability" under the twelve factors listed in the comment to Rule 803(25). *Id*. at 828. It noted that the trial court determined that B.J.'s statements possessed substantial indicia of reliability, such that there was

15

substantial evidence to support the trial court's ruling. *Id.* The court also found that Petitioner's Sixth Amendment rights were not violated, as the victim's statements to Smith were made during the course of treatment and were not testimonial in nature. *Id.*

The "tender years exception" of Mississippi Rule of Evidence 803(25) provides:

A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testified at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

Miss. R. Evid. 803(25).

A child is an "unavailable" witness under Mississippi Rule of Evidence 804(a)(6) if there is a "substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused." Miss. R. Evid. 804 (a)(6). At Petitioner's trial, the judge analyzed the evidence and determined that it had been established "beyond any reasonable argument that this child has unquestionably been . . . sexually abused[.]" (SCR vol. 4, 197-201). After considering the factors listed under the comment to M.R.E. 803(25), the trial court found the "implication of these defendants is reliable" and that B.J.'s hearsay statements should be admitted under the exception. (SCR vol. 4, 201).

The trial court's admission of B.J.'s statements under the tender years exception is an evidentiary ruling, which is not generally cognizable on federal habeas review. The evidentiary rulings of a state court present issues of state law and "present cognizable habeas claims only if

they run afoul of specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). Erroneously admitted testimony forms the basis for federal habeas relief only when the prejudicial testimony "played 'a crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). Here, the trial court analyzed the evidence in light of the factors indicated by Rule 803(25), and it found that the defendants were reliably implicated. (*See* SCR vol. 4, 201). Petitioner does not show an error by the trial judge.

Petitioner also claims that the admission of B.J.'s statements violated his right to confrontation. The Confrontation Clause to the United States Constitution provides a criminal defendant the right to confront witnesses against him. U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that testimonial out-of-court statements are inadmissible unless the witness is unavailable and the defendant has had an opportunity to cross-examine the witness about the statements. *Id.* at 68. Although no precise definition of "testimonial" was offered by the Court, it did note that the term would apply to sworn testimony, police interrogations, or formal statements to government officials. *Id.* at 51. The Court further delineated the difference between nontestimonial and testimonial hearsay in *Davis v. Washington*, 547 U.S. 813 (2006), holding:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 22.

On direct appeal, the Mississippi Court of Appeals found that the statements made by B.J. during the forensic interview, which was instigated by the Department of Human Services, did not arise due to a police investigation and were non-testimonial in nature. *Jordan*, 80 So. 3d at 828. It also determined that B.J.'s statements to Smith were made during the course of therapy and were likewise non-testimonial. *Id.* It further found that even if the forensic interview were testimonial in nature, however, its admission would be harmless, as Krystal, "a participant and a direct eyewitness to the sexual abuse," identified the defendants as perpetrators. *Id.*

The Court determines that even if it were to find B.J.'s statements during the forensic interview testimonial, that is, that they were elicited from her for the primary purpose of establishing events relevant to a later criminal prosecution, any Confrontation Clause violation is harmless. *See, e.g., Fratta v. Quarterman*, 536 F.3d 485, 508 (5th Cir. 2008) (holding that Confrontation Clause violations are subject to a harmless error analysis). Under a harmless error analysis, a habeas petitioner is not entitled to federal habeas relief unless he can establish that "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted). In this instance, Petitioner was identified as a perpetrator through Krystal's testimony, Martha's testimony, Gloria's testimony, and Smith's testimony. B.J.'s statements to her family members and her therapist were nontestimonial. Therefore, B.J.'s statements in the forensic interview were cumulative and did not have a substantial or injurious effect on the jury's verdict. Habeas relief is not warranted on this claim.

## IV.    Indictment

Petitioner maintains that the trial court improperly allowed the prosecution to amend the indictment. Petitioner was ultimately convicted on Counts 1, 3, 5, 7, 10, and 33 of the second superseding indictment. (SCR vol. 2, 202).

The indictment originally charged that Petitioner committed the charged offenses in particular months, but the trial court later allowed the state to amend the indictment to expand the time frame in which the offenses occurred. (*See, e.g.*, SCR vol. 1, 59-67). Petitioner objected to this amendment on the ground that it was improper and untimely, and that it added "new substantive counts" that would violate Petitioner's rights. (SCR vol. 9, 923). The prosecutor argued that the proof was in conformance with the requested amendments, and that the proof was admitted without objection from the defendants. (SCR vol. 9, 925-26). The trial court ultimately allowed the amendment, stating:

> There's been no demonstrated compromise in the defendant's ability to defend the case based upon the fact that the indictment originally alleged a general time frame for these offenses; and further, the Court believes that it's not a matter of substance and that it is a matter of form and it does conform with the proof in this case[.]

(*Id.* at 926).

On direct appeal, the Mississippi Supreme Court found that the amendment was one of form, as "[t]ime is not an essential element of the crimes of sexual battery, gratification of lust, and child abuse." *Jordan*, 80 So. 3d at 827. Finding that the defendants were not prejudiced by the amendment to the indictment, the court found the issue without merit. *Id.*

The sufficiency of a state indictment does not form a basis for federal habeas relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction.

*Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003). Because the State court has found the

Petitioner's indictment sufficient under State law, this Court "need not address" the issue.

*McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citations omitted). Nonetheless, the Court

notes that Mississippi law provides that "[a]n indictment for any offense shall not be insufficient

for omitting to state the time at which the offense was committed in any case where time is not of

the essence of the offense, nor for stating the time imperfectly[.]" Miss. Code Ann. § 99-7-5.

Petitioner was on fair notice of the charges against him, and the amendment did not have any

material effect on his ability to present a defense. This claim does not warrant federal habeas

relief.

## V.    Weight of the evidence

Petitioner challenges the weight of the evidence for his convictions. On appeal, the

Mississippi Court of Appeals examined the evidence in the light most favorable to the

prosecution and upheld Petitioner's convictions as "not contrary to the overwhelming weight of

the evidence." *Jordan*, 80 So. 3d at 832.

A claim challenging the weight of the evidence requires an assessment of the credibility

of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982).[10] The jury, not a

reviewing court, bears "the responsibility. . . fairly to resolve conflicts in the testimony, to weigh

the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 45 n.21

---

[10] The Court notes that a claim to the sufficiency of the evidence is cognizable on federal habeas review. The evidence is insufficient to support the verdict if, in viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

(citation omitted). Therefore, the weight of the evidence is not an issue assessed on federal

habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas

court has no power to grant habeas corpus relief because it finds that the state conviction is

against the 'weight' of the evidence[.]"). Accordingly, to the extent Petitioner attempts to raise

such a claim, he is not entitled to habeas relief based on his challenge to the weight of the

evidence.

The Court nonetheless notes that this issue was presented to the Mississippi Court of

Appeals, which found it without merit. *Jordan*, 80 So. 3d at 832. It was rejected by the

Mississippi Supreme Court on certiorari review. The decision rejecting this claim is not contrary

to, nor does it involve an unreasonable application of, clearly established federal law, and it is not

based on an unreasonable determination of the facts in light of the evidence presented. Habeas

relief is denied.

### Certificate of Appealability

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's

decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless

Petitioner makes "a substantial showing of the denial of a constitutional right" of any claim

rejected on its merits, which Petitioner may do by demonstrating that "reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has

been rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right

and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied as to all claims raised by Petitioner.

### Conclusion

It is hereby ordered that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. All pending motions are **DISMISSED AS MOOT**. A judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 24th day of July, 2014.

_____

**SENIOR U.S. DISTRICT JUDGE**